## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| TIMOTHY A. WESTOVER, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-816-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Timothy A. Westover ("Westover") filed this action pursuant to Sections 405(g)

and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for a period of disability and disability

insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of

the Social Security Act ("SSA"). Westover applied for disability insurance benefits and SSI

benefits on March 31, 2006,[1] alleging disability commencing June 17, 2005. (Tr. 34, 125-135).

---

[1] Westover stated in his brief that he filed applications for a period of disability, disability insurance benefits and SSI on March 29, 2006. (Plaintiff's Brief ("Pl.'s Br.") at 2.) However, both the "Application Summary for Supplemental Security Income" and the "Application for Disability Insurance Benefits" show an application date of March 31, 2006. (Tr. 125-135.) Additionally, the ALJ decision from September 4, 2008 states that Appellant filed a Title II application for disability insurance benefits and a Title XVI application for SSI on March 31, 2006.

After his applications for benefits were denied initially and on reconsideration, Westover requested a hearing before an administrative law judge ("ALJ".) (Tr. 34, 83-86, 89-96, 98-103, 45-74.)  The ALJ held a hearing on July 3, 2008 and issued an unfavorable decision on September 4, 2008. (Tr. 31-74.)  The Appeals Council denied Westover's request for review on August 31, 2011, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4-10.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v.*

2

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

Violation of a regulation constitutes error and establishes a basis for reversal of the agency action and remand unless a reviewing court finds that the error is harmless. *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Id.* at 622. Remand would be necessary only if the claimant's substantial rights have been affected. See *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 200); *Brock v. Chater*, 84 F,3d 726, 728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v. Bowen*, 837 F.3d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

### III. ISSUES

In his brief, Westover presents the following specific issues:[2]

1. Whether the Commissioner properly evaluated the medical opinion evidence in the record; and

2. Whether the ALJ properly considered all of Westover's medically determinable impairments in his residual functional capacity ("RFC") determination.

---

[2] The Court notes that Westover, in his brief, states that the "sole issue is whether the Secretary's denial of a period of disability, disability insurance benefits and supplemental security income can be supported by the substantial evidence of record." (Pl.'s Br. at 1.) The Court will not address this stated issue as a separate issue but will focus on addressing the specific issues set forth and argued by Westover in his brief.

## IV. ADMINISTRATIVE RECORD

In his September 4, 2008 decision, the ALJ first found that Westover met the insured status requirements of the SSA through September 30, 2005 and that he had not engaged in substantial gainful activity since June 17, 2005, the alleged date of the onset of Westover's disability.  (Tr. 36.)  The ALJ next found that Westover had the severe impairments of "major depressive disorder, anxiety disorder, and leg, hip, and shoulder pain post injury at work and a motor vehicle accident." (Tr. 36.)  Additionally, the ALJ determined that Westover "experiences moderate limitation in his activities of daily living; ability to maintain social functioning; and ability to maintain concentration, persistence, or pace." (Tr. 42.)

Next, the ALJ held that none of Westover's impairments or combination of impairments met or medically equaled any impairment in the Listing.  (Tr. 36.)  As to Westover's RFC, the ALJ stated:

> The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  He is able to stand and/or walk at least 2 hours in an 8-hour workday and sit for about 6 hours. He can not climb ladders, ropes, or scaffolds. He is able to occasionally climb ramps and stairs, balance, kneel, crouch, crawl, and stoop.  He is able to frequently reach, handle, finger, and feel.  He cannot reach overhead or perform constant hand or arm motion.  He must avoid all exposure to work around hazardous moving machinery, excessive vibration, and work at unprotected heights.  He is able to understand, remember, and carry out detailed instructions.  He is able to make judgments on detailed work related decisions.  He is able to respond appropriately to supervision, co-workers, and work pressures.  He is limited to only occasional contact with the public.

(Tr. 40-41.)  In making this determination, the ALJ stated the following:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  I have also considered opinion

evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. 41.)

The ALJ opined, based on his RFC assessment, that Westover was unable to perform any past relevant work. (Tr. 43.) However, when considering Westover's age, education, work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 43.) Specifically, the ALJ relying on the vocational expert's testimony at the hearing, found that Westover could perform jobs as: (1) a semi–skilled bench assembler; (2) an unskilled hand packager; and (3) an unskilled inspector/packer/sorter. (Tr. 43-44.) Thus, the ALJ concluded that Westover was not disabled. (Tr. 44.)

# V. DISCUSSION

## A. RFC Determination

Westover argues generally that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Westover claims that the ALJ erred by failing to: (1) properly consider the medical opinion evidence; and (2) give due consideration to all of his medically determinable impairments. (Pl.'s Br. at 1.)

RFC is what an individual can still do despite his limitations.[3] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.; See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour, five days a week, or equivalent schedule. *Id.* RFC

---

[3] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four.

is not the least an individual can do, but the most. SSR 96-8p at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.,* SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), superseded by SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

### 1. Medical Opinion Evidence

As to his claim that the ALJ failed to properly consider the medical opinion evidence, Westover argues:

> Upon reviewing the evidence, the State Agency medical consultant (SAMC) determined that Plaintiff had moderate limitations in activities of daily living; social functioning; and in his ability to maintain concentration, persistence or pace. The ALJ agreed. However, the SAMC found Plaintiff to be moderately limited in five occupational categories. The ALJ never considered these limitations. Further, the Plaintiff was said to be limited to the ability to

understand and follow simple instructions. The ALJ found that the Plaintiff can perform detailed instructions. The ALJ noted some of the findings of the state agency consultant but concluded that "these earlier determinations support my conclusion that Mr. Westover is not disabled." But the ALJ never discussed the specific limitations noted by the SAMC, nor did he explain why he either came to a contrary conclusion or chose to ignore those findings.

Pl.'s Br. at 8 (internal citations omitted).

SAMC Margaret Meyer, M.D. ("Meyer"), set forth her opinions of Westover's mental impairments in two documents, both dated July 19, 2006: (1) a Psychiatric Review Technique form ("PRTF") (Tr. 382-95) and (2) a Mental Residual Functional Capacity Assessment ("MRFC") (Tr. 396-399). In the PRTF, SAMC Meyer opined that Westover suffered from recurrent major depressive disorder and a generalized anxiety disorder, neither of which satisfied the diagnostic criteria of any impairment in the Listing. (Tr. 382-91.) SAMC further opined that pursuant to the "'B' Criteria of the Listings," Westover was: (1) moderately restricted in his activities of daily living; (2) had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and (3) had no episodes of decompensation. (Tr. 392.)

In Section I of the MRFC, SAMC Meyer determined that Westover was moderately limited in the following areas: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) the ability to interact appropriately with the general public; (4) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (5) the ability to respond appropriately to changes in the work setting. (Tr. 396-97.) In Section III of the MRFC, Dr. Meyer concluded that "[t]he claimant

retains the ability to understand and follow simple instruction, to adequately interact with coworkers and supervisors and to adapt to routine working environments." (Tr. 398.)

In this case, as stated above, the ALJ determined that Westover had the mental RFC to: (1) understand, remember, and carry out detailed instructions; (2) make judgments on detailed work related decisions; and (3) respond appropriately to supervision, co-workers, and work pressures. (Tr. 40-41.) The ALJ did further limit Westover to only occasional contact with the public. (Tr. 41.) In making this RFC determination, the ALJ went through the medical evidence in the record. Specifically, the ALJ considered an evaluation conducted on June 28, 2006 by Dr. Skye Moffit, Ph.D. ("Dr. Moffit") (Tr. 38-39, 358-360). Dr. Moffit made several determinations, including that: (1) Westover had a cohesive, coherent, and organized content of thought; (2) Westover's concentration was within normal limits; and (3) Westover's abstract thinking was within normal limits.[4]  (Tr. 38-39; *see* Tr. 359-60.) The ALJ also noted that in a November 2007 examination Westover "denied any psychosis or being depressed, anxious, or manic." (Tr. 40; *see* Tr. 747.) Furthermore, the ALJ, acknowledging SAMC Margaret Meyer's July 19, 2006 opinions, stated:

> With respect to his depression and anxiety, the State agency found the claimant experienced moderate restriction of his activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. He retained the ability to understand and follow simple instruction, to adequately interact with co-workers and supervisors and to adapt to routine work environments. It was noted Mr. Westover had never been hospitalized for any psychiatric illness and his last treatment had been for only one session in MHMR in 2000. (Exhibits B-7F [Tr., 382-95, SAMC Meyer's July 19, 2006 PRTF)] and B-8F [Tr. 396-99, SAMC Meyer's July 19, 2006 MRFC]). These findings were upheld upon reconsideration.

---

[4] In a "Current Level of Functioning" section of his examination report, which appears to be a summary of what Westover reported about his own activities, Dr. Moffitt noted that Westover's concentration for watching television and movies was poor  and that, as to his persistence and pace, "Westover completes the projects around the house with difficulty." (Tr. 360.)

> I find these earlier determinations support my conclusion that Mr. Westover is not disabled.
>
> I further find that the claimant experiences moderate limitations in his activities of daily living; ability to maintain social functioning; and ability to maintain concentration, persistence, or pace. There have been no episodes of decompensation.

(Tr. 42 (internal citations omitted).) In addition, the ALJ recognized that Westover had a history of traumatic injury and treatment for depression but noted that "he ha[d] been lax in pursuing mental health services and not always compliant with either his appointments or his medications." (Tr. 42.)

An ALJ is to consider all medical opinions in determining the disability status of a claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S.A. Jul. 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

Westover specifically claims that the ALJ did not consider or discuss the July 19, 2006 opinion of SAMC Dr. Meyer in the MRFC that Westover was moderately limited in five occupational categories. *See* Pl.'s Br. at 8-10. (*See* Tr. 396-399.) While the Court agrees that the ALJ did not specifically mention in his decision the limitations noted in Section I of the above-referenced MRFC, it is clear that the ALJ considered SAMC Meyer's opinions in the MRFC as he specifically referred to the exhibit in the record where the MRFC was located and

set forth what SAMC Meyer's opinions were in Section II of the MRFC. (Tr. 42.) In addition, there is "nothing in the Commissioner's regulations or rulings that requires an ALJ to make findings concerning each of the limitations listed [in Section I] on the 'Summary Conclusions' portion of the [MRFC] forms utilized by the SAMCs in assessing a claimant's mental residual functional capacity." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct. 22, 2008).    According to the Commissioner's Programs Operations Manual System ("POMS"), Section I of the MRFC, which contains the limitations that Westover claims should not have been left out of the RFC determination, is "merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**."    POMS § DI 24510.060B.2 (emphasis in original).    Section III of the MRFC "is for recording the mental RFC determination."    POMS § DI 24510.060B.4.   "It is in this section that the **actual mental RFC assessment is recorded**, explaining the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* (emphasis in original).  Thus, based upon the MRFC form itself, it was not error for the ALJ to fail to include or discuss all of the items from Section I of the MRFC in assessing Westover's mental RFC as they did not contain the actual opinion of the SAMC as to Westover's RFC. Instead, it is Section III that contains the actual mental RFC assessment. *See Hickey v. Astrue*, No. 4:09-CV-280-Y, 2010 WL 3835113, at *13 (N.D. Tex. Aug. 2, 2010.)

Additionally, the ALJ was not bound by SAMC Meyer's opinions in Section III regarding Westover's RFC and, instead, is responsible for resolving conflicting medical opinions. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  Even though there is some inconsistency between the limitations noted in section III of SAMC Meyer's MRFC and

11

the ALJ's RFC assessment, "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse*, 925 F.2d at 790 (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). In this case, the ALJ: (1) properly considered and discussed the evidence in the record, including SAMC Meyer's MRFC, in assessing Westover's RFC; (2) adequately explained the reasoning for his RFC decision and for giving less weight to certain evidence; and (3) exercised his responsibility as a factfinder in weighing the evidence in choosing to incorporate limitations into his RFC determination that were most supported by the record. *Muse,* 925 F.2d at 790. Consequently, the ALJ did not err and remand is not required.

### 2. Due Consideration to Medically Determinable Impairments

Westover also contends that the ALJ failed to consider all of Westover's functional limitations when making his RFC assessment. Pl.'s Br. at 12. Specifically, Westover argues that the ALJ: (1) did not incorporate Westover's moderate limitations in concentration, persistence or pace into the RFC; and (2) improperly evaluated Westover's bilateral hearing loss in determining that it was not a severe impairment. Pl.'s Br. at 12-13.

As stated above, in making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitation and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded

12

observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5. When the ALJ considers non-exertional limitations, he is to consider all work-related limitations and restrictions that do not depend on an individual's physical strength and is to express such non-exertional capacity in terms of work-related functions. *Id.*

### i.    Moderate Limitations in Concentration, Persistence, or Pace

In this case, while analyzing Westover's mental impairment pursuant to the requirements under the regulations, the ALJ concluded, based on the evidence in the record, that Westover "experiences moderate limitation in his . . . ability to maintain concentration, persistence, or pace." (Tr. 42.) In his mental RFC determination, the ALJ, *inter alia*, stated that Westover could understand, remember, and carry out detailed instructions and make judgments on detailed work-related decisions. (Tr. 40-14.) Westover argues, in essence, that the ALJ erred in his mental RFC assessment because the ALJ's finding in the "special technique," as explained below, of a moderate limitations in his ability to maintain concentration, persistence, and pace is not related or analogous to a functional limitation in the RFC in being able to understand, remember, and carry out detailed instructions and that the ALJ should have included additional limitations in his mental RFC determination.

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment.   20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the

regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c).[5] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[6] and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[7] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. § 404.1520a(d)(2).[8] To determine if it meets or is equivalent in severity to a listed mental disorder,

---

[5] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[6] The category of concentration, persistence or pace refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[7] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[8] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed

the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

As noted above, the responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In this case, the ALJ, based on all of the evidence in the record, determined, in essence, that Westover's moderate limitation in concentration, persistence, and pace found in the "special technique" analysis affected his RFC as a limitation that Westover could perform work that involved detailed instructions. The paragraph B criteria limitation of having a moderate deficiency in concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Westover's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." *Id.* The RFC assessment includes consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6. "While the regulations require the ALJ to evaluate[] the

---

impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into . . . the RFC determination." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the facts in this case, the ALJ's RFC determination limiting Westover to only performing work that involved detailed instructions does not appear to be inherently contradictory with the ALJ's finding in the "special technique" that Westover was moderately limited in his ability to maintain concentration, persistence, or pace. To begin with, it is clear that the ALJ recognized in his decision that he was required to evaluate Westover's mental impairments pursuant to the "special technique" set forth in the regulations as he made such an evaluation. (Tr. 42.) In performing such an evaluation, the ALJ found, based on SAMC Meyer's PRTF, that Westover suffered from moderate deficiencies of concentration, persistence, and pace. (Tr. 42; *see* Tr. 392.) Then, relying on other substantial evidence in the record, the ALJ impliedly found that this limitation only warranted a limitation in the RFC to the performance of detailed instructions. (Tr. 24.)

The record indicates that the ALJ incorporated Westover's functional limitations from his mental impairment into the RFC based upon the ALJ's evaluation of the evidence in this case. The ALJ properly discussed the evidence in the record in making his RFC determination, explained the reasoning for his RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Because there is substantial evidence in the record that supports the ALJ's evaluation of Westover's mental impairments as well as his mental RFC assessment, remand is not required. [9]

In a similar and related argument, Westover also claims that the hypothetical the ALJ presented to the VE at the hearing and which the ALJ relied on in making his decision was defective because it did not contain all the limitations contained in Section I of SAMC Meyer's MRFC. (Pl.'s Br. at 8-11.) Westover further claims that the ALJ has not properly established the existence of other work which Westover can perform because he failed to incorporate Westover's moderate limitations in concentration, persistence and pace into the hypothetical he posed to the VE. (Pl.'s Reply Brief ("Pl.'s Reply Br.") at 5.) Because of this incomplete hypothetical, Westover argues that his RFC determination is defective. *Id.*

---

[9] *See, e.g., De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had a moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, and make decisions, attend and concentrate for extended periods); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions); *Adams v. Astrue*, No. CV 07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."); *Hodgson v. Astrue*, No. 4:07-CV-529-Y, 2008 WL 4277168, at *8 (N.D. Tex. Sept. 16, 2008) ("[The claimant] has not demonstrated that a restriction [in the RFC determination] to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace."). *See also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("Based on this record, the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive tasks adequately captures [the claimant's] deficiencies in concentration, persistence or pace."); *Anderson v. Astrue*, No. 09-0971-TC, 2011 WL 1655552, at *3 (D. Or. Mar. 25, 2011) ("Moderate, and even marked limitations in the ability to maintain attention, concentration, persistence or paces are compatible with the ability to perform unskilled jobs involving simple tasks."). *But see Eastham*, No. 3:10-CV-2001-L, 2012 WL 691893, at *6-9 (N.D. Tex. Feb. 17, 2012) ("The Court finds that the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or paces was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The hypothetical question posed to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

During the hearing, the ALJ asked the VE to consider the following hypothetical:

> Okay. Assume for me an individual the same age, education and vocational history of Claimant. Further assume that this hypothetical individual has the following limitations: lift and carry occasionally 20 pounds; lift and carry frequently 10 pounds. Stand and walk--stand and walk at least two hours in an eight-hour day, and sit about six hours in an eight-hour day. And could alternate sitting and standing as needed. No climbing of scaffolds, ropes or ladders occasional ramps and stairs. Occasional balancing, kneeling, crouching, crawling and stooping. No overhead reaching. Frequent reaching, handling, fingering and feeling bilateral.
>
> . . . .
>
> . . . No visual or communication limitations. No work around hazardous moving machinery, work at unprotected heights, no work in areas of excessive noise. Would be able to understand, remember and carry out detailed, but not complex instruction. Could make judgments on detail-related work decisions, but not complex. Only occasional public contact, face-to-face public contact.

(Tr. 75-76.) Based on this hypothetical, the VE testified that Westover was not capable of performing his past relevant work but that other jobs were available that he could perform. (Tr. 76.)

In the hypothetical question that the ALJ asked the VE, the ALJ properly incorporated all the functional limitations that he **found** in his RFC assessment into the hypothetical question.

(*Compare* Tr. 40-41 *with* Tr. 76.)  Specifically, the ALJ's hypothetical limitation to "detailed, but not complex instruction" indicates incorporation of Westover's impairment in concentration, persistence, or pace. (Tr. 76.)  As discussed above, the ALJ was not required to incorporate the additional limitations suggested by SAMC Meyer in section I of the MRFC.  Because the ALJ properly incorporated all the functional limitations that he had found in his RFC assessment into the hypothetical question and the RFC determination is supported by substantial evidence, as discussed above, the Court finds that the ALJ did not present a defective hypothetical to the VE.[10]

### ii.      Evaluation of Bilateral Hearing Loss

Westover further contends that the ALJ improperly found that Westover's hearing loss was not a severe impairment.[11]  *See* Pl.'s Br. at 14-15.  The Commissioner has issued regulations that define a severe impairment as one which significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  The Fifth Circuit, however, has found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act.  *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985.)  Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: an impairment is not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to

---

[10] The Court notes that Westover also argues that the ALJ, in essence, erred in not explaining why he did not give weight to the VE's testimony that "significant limitations in the ability to maintain concentration could preclude performance of the jobs relied upon by the ALJ." (Pl.'s Br. at 10; Pl.'s Reply Br. at 4.)  This testimony was given in response to a question from Westover's attorney regarding whether further limitations that affect a person's ability to focus, concentrate, and focus, affect a person's ability to perform the jobs proposed by the VE.  (Tr. 78-79.) Westover's argument, however, is not relevant here because the ALJ determined in his RFC assessment, that Westover's only limitation as to his concentration was adequately accounted for as a limitation to performing jobs that required detailed instructions.  Because such RFC determination was supported by substantial evidence and the ALJ properly incorporated the limitations from the RFC determination into the hypothetical question to the VE, the ALJ did not err.

[11] The Court notes that Westover does not argue that the ALJ did not apply the appropriate severity standard at Step Two.  Thus, the Court will not consider this issue.

interfere with the individual's ability to work, irrespective of age, education or work experience. *Stone*, 752 F.2d at 1101 (emphasis added). The *Stone* severity standard does not allow for any interference with work ability, not even minimal interference. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 8055 (N.D. Tex. 2009) ("Stone provides no allowance for a minimal interference on a claimant's ability to work.")

As to Westover's hearing problems, the ALJ stated, " I further find the claimant's hearing problems are not "severe." (Tr. 40.) In concluding that Westover did not have a severe hearing problem at Step Two, the ALJ considered, *inter alia*, the following: (1) an otolaryngological evaluation and corresponding audiometric report and hearing aid evaluation report; (2) the ALJ's own observations of Westover during the proceedings; and (3) the fact that Westover wears bilateral hearing aids. (Tr. 40.) In the otolaryngological evaluation, conducted on January 8, 2007, John Fewins, M.D. ("Dr. Fewins") stated that Westover had difficulty hearing on the telephone without assistance or amplification but that his "[c]ommunication is appropriate for age without hoarseness." (Tr. 491-92.) In the "Plan" portion of the examination report, Dr. Fewins concluded, "Either middle ear explorations with ossicular[12] reconstruction versus stapedectomy[13] or hearing aid trial is indicated. The patient's prognosis for good function is excellent if the above is done." (Tr. 492.) As part of the examination, Fewins considered an Audiometric Consultative Examination Report prepared on January 4, 2007 by J. Thomas Roth, an audiologist. (Tr. 493.) This report indicated that Westover had speech reception of 40 in the right ear and 50 in the left and word discrimination of 100% in the right ear and 96% in the left.

---

[12] "Ossicular" is defined as "pertaining to an ossicle." Dorland's Illustrated Medical Dictionary 1364 (31st ed. 2007). An "ossicle" is a small bone. *Id.*

[13] A "stapedectomy" is the "excision of the stapes." Dorland's Illustrated Medical Dictionary 1790 (31st ed. 2007). "Stapes" is the "innermost of the auditory ossicles." *Id.*

(*Id.*)  In addition, Roth also prepared a Hearing Examination Report dated January 4, 2007 that indicated Westover needed new hearing aids.  (Tr. 494.)

An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ.  *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009) (citations omitted).  In this case, there is medical evidence in the record that supports the ALJ's finding that Westover's hearing impairment has such a minimal effect on Westover that it would not be expected to interfere with his ability to work.  Moreover, "[i]f an impairment reasonably can be remedied . . ., it cannot serve as a basis for finding a disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *see* 20 C.F.R. §§ 404.1530(b), 416.930(a).  Because there is substantial evidence in the record that supports the ALJ's severity assessment regarding Westover's hearing impairment, remand is not required.

Furthermore, assuming *arguendo* that the ALJ should have concluded Westover's hearing impairment was severe, remand would be necessary only if the claimant's substantial rights have been affected.  *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.").  To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, Westover has failed to show that he was prejudiced by the determination that his hearing impairment is not severe. In his RFC determination and in the hypothetical posed to the vocational expert ("VE"), the ALJ included a requirement that excluded work in areas of either excessive noise or vibration. (Tr. 75-76.) The VE then provided three potential jobs someone could work given that noise limitation, among others. (Tr. 76-77.) Thus, even if the ALJ should have determined that Westover's hearing impairment was severe, Westover has not shown prejudice as necessary to require a remand.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusion accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 30, 2012** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November  16, 2012.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv